# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES COOPER,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.                                              No. 09-162-DRH

## <u>ORDER</u>

**HERNDON, Chief Judge:**

Before the Court is movant James Cooper's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Doc. 1). Cooper was found guilty by a jury on drug and gun charges, 21 U.S.C. §§ 846, 841(a)(1), 18 U.S.C. §§ 922(g)(1), 924(a)(2), and was sentenced to 285 months' imprisonment. (Doc. 174, 03-cr-40059). He appealed and was appointed counsel, but his appointed counsel sought leave to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he could not discern a nonfrivolous issue to pursue. The appellate court agreed with counsel, granted his motion, and dismissed the appeal. See *United States v. Cooper*, 224 Fed. Appx. 537 (7th Cir. 2007). Now, in his § 2255 motion, Cooper seeks to vacate, set aside, or correct his sentence based upon claims of ineffective assistance of trial counsel. For the reasons that follow, the motion is denied.

## I. Background

On July 10, 2003, a criminal complaint alleging conspiracy to distribute crack

cocaine was filed against Cooper and his confederate James Golden, who used to run drugs for Cooper. Both were arrested and made their initial appearances that same day. On July 15, 2003, attorney Gary E. Milone, Sr. was appointed as Cooper's counsel based on Cooper's sworn financial affidavit. On August 7, 2003, a one count indictment charging conspiracy to distribute and possess with intent to distribute five grams or more of crack cocaine was filed against Cooper and Golden. On August 15, 2003, Cooper was arraigned and entered a not guilty plea. Trial was set for October 14, 2003.

On October 6, 2003, a final pretrial conference was held, where attorney Milone made an oral motion to withdraw as Cooper's counsel because Cooper had retained private counsel, attorney Charles Stegmeyer. The Court granted the motion to withdraw and the parties' motion to continue, finding that the failure to grant the motion would likely result in miscarriage of justice and that the ends of justice outweighs the best interest of the public and the defendant in a speedy trial. Attorney Stegmeyer entered his appearance to represent Cooper and the Court rescheduled the trial date for December 8, 2003.

On November 21, 2003, at the final pre-trial conference, both parties moved to continue the trial. The matter was set for a trial setting of February 11, 2004. On January 23, 2004, the Court held a final pre-trial conference and took up the issue of numerous letters it had received from Cooper. On its own motion, the Court ordered Cooper to be sent "to medical for an evaluation." Therefore, the Court continued the trial setting until April 5, 2004.

On March 25, 2004, the Court ordered Cooper to "be transported IMMEDIATELY AND FORTHWITH" to a federal medical facility for full evaluation and treatment. On March 29, 2004, the Court entered a supplemental order explaining his reasons for ordering Cooper to undergo an examination to determine his competency to stand trial.

On May 21, 2004, the Court entered an order, noting that it had been informed that defendant was still in medical and unable to be in court. Thus, the Court reset the trial date for July 12, 2004. On June 15, 2004, the Court entered an order resetting the trial setting of July 12, 2004, until June 28, 2004. On June 24, 2004, following the final pretrial conference, the Court entered an order adopting the evaluation report finding Cooper competent to stand trial. The Court also noted that counsel for the government advised the Court that they were working on setting up a proffer for Cooper, and defense counsel made an oral motion to continue trial and have the case set for a change of plea. The Court noted that defendant filed a written waiver of speedy trial with the Court. Accordingly, the Court set the case for a change of plea hearing on August 18, 2004.

On July 26, 2004, attorney Stegmeyer filed a motion to withdraw as movant's attorney, noting that the attorney-client relationship had broken down irretrievably. Two days later movant filed a pro se motion to substitute counsel. On July 29, 2004, the Court entered an order granting the motion to withdraw and substitute counsel. On August 12, 2004, attorney Matthew Vaughn was appointed to represent movant. On August 17, 2004, movant filed a motion to continue the change of plea hearing so

counsel could review discovery and discuss with movant how to proceed.  On August 18, 2004, movant filed a pro se motion to withdraw the waiver of speedy trial.  On August 24, 2004, the Court granted counsel's motion to continue, resetting the change of plea hearing until September 24, 2004.  The next day the Court struck movant's pro se motion to withdraw the speedy trial waiver because movant did not have a right to submit a pro se brief when represented by counsel.

On September 24, 2004, the parties appeared for the change of plea hearing and movant moved to continue the matter because he had only been in this case a short time.  The Court granted movant's request and reset the trial setting to November 15, 2004. On November 2, 2004, movant filed a motion to continue the final pretrial conference and trial.  On November 5, 2004, the Court granted the motion to continue and reset the trial date until February 7, 2005.  On November 24, 2004, movant filed a pro se motion of ineffective assistance of counsel motion against attorney Vaughn contending that Vaughn has continually refused to file motions on his behalf, including a motion for dismissal and a motion to withdraw his speedy trial waiver.  He also alleged that he did not consent to Vaughn filing a motion to continue on November 2, 2004, in violation of his speedy trial rights.  The Court construed this as a motion for new counsel and set the matter for hearing.  On December 17, 2004, the Court heard from Cooper and Vaughn regarding Cooper's pro se motion which the Court construed as a motion for new counsel.  The Court advised Cooper that he could represent himself in this matter but Cooper declined, and the Court ordered Vaughn to remain in this case.

On January 4, 2005, a superseding indictment was filed against Cooper. On January 20, 2005, a second superseding indictment was filed. On January 31, 2005, the Court held a final pretrial conference and entered an order noting that Cooper would not waive the thirty-day period required to be given to him after arraignment unless waived or sign anything waiving the thirty day period, and reset the final pretrial conference for March 3, 2005, with a jury trial set for March 21, 2005.

On February 8, 2005, a third superseding indictment was filed charging Cooper with two counts of conspiracy to distribute crack cocaine, three counts of distribution of crack cocaine, possession with intent to distribute crack cocaine, possession with intent to distribute cocaine, and possession of a firearm by a felon. On March 4, 2005, the Court entered an order indicating that Judge Herndon would preside over Cooper's trial on March 21, 2005, because Judge Gilbert had another criminal trial. On March 9, 2005, attorney Vaughn filed a motion to continue, or in the alternative, request for other relief, noting that movant has repeatedly told counsel that movant does not wish for a continuance of the trial and that on multiple occasions, defendant had sought to revoke the waiver of speedy trial he filed on June 24, 2012, but that counsel needed additional time to adequately prepare for trial or alternatively wanted an order directing the Marshall's office to serve amended subpoenas on individuals who were to testify at trial. On March 10, 2012, the Court entered an order finding that because the Court finds "further delay of this trial unnecessary and, in fact, problematic, the Court DENIES Defendant's motion to continue (Doc. 108)." "However, the Court GRANTS Defendant's alternative request

to have amended subpoenas served on individuals to appear at trial." Trial began March 21, 2005.

At trial,[1] the evidence established that police sent an informant to make three separate controlled buys of crack from Golden, who ran drugs for Cooper. Golden testified for the government that on all three occasions he used the informant's cell phone to contact Cooper, who then – outside of the informant's view – delivered the drugs. Golden also testified that he acted as the middleman for Cooper in other drug transactions and that Cooper occasionally fronted him drugs, expecting payment only after he resold them. The informant corroborated Golden's account.

Surveillance officers who monitored the controlled buys also testified that they observed Cooper and Golden meet during all three transactions, and that they found the marked money from the third purchase in Cooper's car when they arrested him. Following his arrest, Cooper disclosed after *Miranda* warnings the numbers assigned to his pager and cell phone; those numbers were dialed from the informant's cell phone during the controlled buys. Officers also executed a search warrant of Cooper's apartment and found roughly 540 grams of crack, 340 grams of powder cocaine, three firearms, and $8,400 in currency. The police overlooked $112,000 in $20 bills that a maintenance man found later.

The government also called nine other witnesses who bought drugs from

---

[1]The Court has drawn the facts summarizing what was shown at movant's trial from the Seventh Circuit's opinion deciding movant's direct appeal. See *Cooper*, 224 Fed. Appx. 537. Additional facts are added in this order where necessary to address the grounds raised in movant's § 2255 motion.

Cooper, sometimes through middleman. One witness explained that Cooper would usually front him drugs twice a day. He testified that they would split "fifty-fifty" the proceeds from the ensuing drug sales – the witness sold the crack for twice what he agreed to pay the defendant.

The jury found Cooper guilty on all charges but one, acquitting Cooper on one count of conspiracy to distribute cocaine. Following the jury verdict, attorney Vaughn moved to withdraw and privately retrained attorney Christopher Kelly entered his appearance. Cooper was sentenced to 285 months' imprisonment. He appealed and was appointed new counsel. Based upon the strained relationship between his appointed counsel and Cooper, his counsel moved to withdraw, which was granted. Again, Cooper was appointed new counsel, but his appointed counsel sought leave to withdraw under *Anders* because he could not discern a nonfrivolous issue to pursue. The appellate court agreed with counsel, granted his motion, and dismissed the appeal. See *Cooper*, 224 Fed. Appx. 537. Cooper filed an application for a writ of *certiorari* with the Supreme Court, which was denied on February 25, 2008. *Cooper v. United States*, 128 S. Ct. 1445 (2008).

On March 2, 2009, movant's § 2255 motion was filed in this Court. In his § 2255 motion, movant raised eight grounds of ineffective assistance of trial counsel, alleging claims against attorneys Milone, Stegmeyer, Vaughn, and Kelly. (Doc. 1). On March 20, 2009, Cooper filed a memorandum in support of his § 2255 motion, and on November 6, 2009, the Court ordered the government to respond to the motion (Doc. 3). On March 22, 2010, the government filed its response (Doc. 10),

contending that Cooper's § 2255 motion was untimely and also responding to the merits of his motion. Cooper filed two separate replies to the government's response, one with regard to the timeliness issue and the other as it pertained to the merits of his claims (Docs. 13 & 14). The Court will address the timeliness issue first, followed by the eight grounds raised in his § 2255 motion.

## II. Legal Standard

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. More precisely, "[r]elief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." *Kelly v. United States,* 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted). As a result, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996).

Of course, a § 2255 motion does not substitute for a direct appeal. A defendant cannot raise constitutional issues that he could have but did not directly appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice. *Bousley v. United States,* 523 U.S. 614, 622 (1998); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States,* 211 F.3d 429, 433 (7th Cir. 2000); *Prewitt,* 83 F.3d at 816. Meanwhile, a § 2255 motion cannot pursue non-constitutional issues that were unraised on direct appeal

regardless of cause and prejudice. *Lanier v. United States,* 220 F.3d 833, 842 (7th Cir. 2000). The only way such issues could be heard in the § 2255 context is if the alleged error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum. They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding. *Massaro v. United States,* 538 U.S. 500, 504-05 (2003); *Fountain,* 211 F.3d at 433-34. Further, the district court before which the original criminal trial occurred, not an appellate court, is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and potential prejudice that stemmed from that performance. *Massaro,* 538 U.S. at 504-05. For these reasons, ineffective assistance of counsel claims, regardless of their substance, may be raised for the first time in a § 2255 petition.

An evidentiary hearing on a § 2255 habeas petition is required when the motion is accompanied by "a detailed and specific affidavit which shows that the petitioner has actual proof of the allegations going beyond mere unsupported assertions." *Barry v. United States,* 528 F.2d 1094, 1101 (7th Cir. 1976) (footnote omitted). "Mere unsupported allegations cannot sustain a petitioner's request for a hearing." *Aleman v. United States,* 878 F.2d 1009, 1012 (7th Cir. 1989). For the

reasons stated below, movant's allegations are unsupported by the record; subsequently, the Court sees no reason to hold an evidentiary hearing on the issues raised.

## III. Analysis

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 688-94 (1984); *Fountain,* 211 F.3d at 434. Either *Strickland* prong may be analyzed first; if that prong is not met, it will prove fatal to plaintiff's claim. *Strickland,* 466 U.S. at 697; *Ebbole v. United States,* 8 F.3d 530, 533 (7th Cir. 1993).

Regarding the first prong of the *Strickland* test, counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Strickland,* 466 U.S. at 689. The petitioner's burden is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotations omitted). In other words, the Court must not become a

"Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

With regards to the second prong of *Strickland,* the petitioner must show that there

is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceedings would have been different. *Fountain*, 211 F.3d at 434; *Adams v.*

*Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined

as one that is sufficient to undermine confidence in an outcome." *Adams,* 453 F.3d

at 435 (citing *Strickland,* 466 U.S. at 694).

A. *Government's Defense: Untimely § 2255 Motion*

The Court first considers the government's timeliness defense. In its response,

the government initially asserts that Cooper's § 2255 motion was not timely filed

under the one year period of limitation from the date Cooper's judgment of conviction

became final. The government notes that the Supreme Court denied Cooper's

petition for writ of certiorari on February 25, 2008. *Cooper*, 552 U.S. 1232. Thus,

his § 2255 motion was due on February 25, 2009, but was not filed until March 2,

2009. The government further contends that while it appears that Cooper desired

to avail himself of the mailbox rule by declaring in his § 2255 motion that he placed

his motion in the prison mailing system on February 24, 2009, it does not appear he

met the further requirement of stating that first-class postage had been prepaid. See

*United States v. Craig*, 368 F.3d 738, 740 (7th Cir. 2004). This spurred Cooper to

file a partial reply to the government's response, attaching a signed declaration

indicating that he gave prison authorities his § 2255 motion on February 24, 2009,

with sufficient prepaid first-class postage. He also attached a certified mail receipt

that was stamped by the prison mailing system on February 25, 2008, along with a copy of the prison's internal mailing log, which showed the same date, and a track and confirm printout from the United States Postal Service's website showing that the same receipt number arrived at the Court on February 28, 2009.

A motion by a federal prisoner for postconviction relief under 28 U.S.C. § 2255 is subject to a one-year time limitation that runs from one of four specified dates, generally the date on which the conviction becomes final. *Clay v. United States*, 537 U.S. 522, 524-25 (2003); see 28 U.S.C. § 2255. More specifically, the one year limitation period runs from the latest of the following dates:

> "(1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by the governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through exercise of due diligence." 28 U.S.C. § 2255(f).

Section 2255's period of limitation is not jurisdictional but is instead a procedural statute of limitations subject to equitable tolling. *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (citing *Taliani v. Chrans*, 189 F.3d 597 (7th Cir. 1999)). "[C]ertain notices of motions of pro se prisoners should be considered filed when these are given to prison authorities, rather than when received by the court; this is known as the 'mailbox rule.'" *Rutledge v. United*

*States*, 230 F.3d 1041, 1051 (7th Cir. 2000).

Here, the Court finds that Cooper has shown that his § 2255 motion was timely filed under the mailbox rule. While the certified mail receipt and prison mail log contain the date, February 25, 2008, the only logical conclusion is that this date must have been stamped in error, as the same receipt number arrived at this Court on February 28, 2009. This, along with Cooper's declaration that he filed his motion with the prison mailing system on February 24, 2009, convinces the Court that his § 2255 motion was timely filed. Thus, the Court will address each of movant's claims of ineffective assistance of trial counsel.

### B. Ground One: Unlawful Stop

In ground one, movant claims that he "received ineffective assistance of counsel when counsel failed to move to suppress evidence obtained as a result of the unlawful stop of movant's motor vehicle on July 9, 2009." Movant contends that the stop was illegal because there was no probable cause and that had counsel filed a motion to suppress, evidence found during the stop would not have been presented to the jury. Specifically, movant points to the exhibits involving the marked currency that were found ripped up in movant's vehicle. He alleges that "[t]hese exhibits were highly prejudicial to the [m]ovant because they served to link the [m]ovant with the 'buy money' which had been provided to the [confidential source] and who, in turn, had provided it to James Golden, who, in turn, was alleged to have provided it to the [m]ovant in exchange for the crack cocaine which Golden had provided to the [c]onfidential [s]ource." The government contends that there was probable cause for

the stop.[2]

"It is well settled that probable cause can be established by an informant's tip along with corroboration by police work." *United States v. Banks*, 405 F.3d 559, 570 (7th Cir. 2005). Here, there was ample evidence to establish probable cause based upon the informant's tip along with corroboration by police work. Prior to Cooper's arrest, police sent an informant to make three separate controlled buys of crack from Golden, who ran drugs for Cooper. Surveillance officers monitored each of these controlled buys and testified that they observed Cooper and Golden meet during all three transactions. On the third buy, officers followed Cooper to Golden's apartment after a call was made on the informant's cell phone to purchase drugs. The officers observed Golden waiting outside for Cooper, get into Cooper's vehicle when it arrived and then exit after approximately two minutes, and then witnessed Cooper drive away. When Cooper left, marked squad cars got behind Cooper and attempted to pull him over. Cooper, however, did not immediately stop and officers observed him swerving in his lane and bending over towards the floor of his vehicle. Officers activated their sirens and motioned for Cooper to pull over but he did not stop for approximately four or five blocks. When Cooper finally did stop, officers approached the vehicle with their guns drawn for fear that Cooper was reaching for

---

[2]The Court assumes, without deciding, that by stopping Cooper and approaching him with guns drawn, then taking him out of his vehicle, handcuffing him, and placing him in the squad car that the police effected a de facto arrest rather than a mere investigatory detention under *Terry v. Ohio*, 392 U.S. 1 (1968). See *United States v. Clark*, 657 F.3d 578, 581 n. 1 (7th Cir. 2011) (reaching the same assumption).

a weapon while he was bending down. Cooper was taken from the vehicle, handcuffed, and placed in the squad car. Upon removing Cooper, the officers observed torn up currency on the floorboard. This turned out to be the buy money given to the informant to purchase the drugs.

The totality of these circumstances gave the officers probable cause to stop Cooper. See, e.g., *Banks*, 405 F.3d at 570; *Clark*, 657 F.3d at 582 ("When [defendant] pulled his pickup into [informant's] driveway, the police had probable cause to believe that he was fulfilling his end of the bargain; in other words, they had probable cause to believe that he was dropping off the order of cocaine."). Thus, Cooper cannot establish that his counsel's performance fell below objective standards for reasonably effective representation by not moving to suppress the evidence. Furthermore, even if there was any error in the admission of the buy money connecting Cooper to Golden, it was harmless. The evidence presented against Cooper in this case was overwhelming and Cooper cannot establish a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceedings would have been different. Thus, this ground is denied.

*C. Ground Two: Unlawful Automobile Search*

In ground two, movant claims "he received ineffective assistance of counsel when his counsel failed to file a motion to suppress the fruit of the warrantless search of the movant's automobile at the Carbondale Police Department on July 9, 2003." Here again movant claims that he suffered prejudice as a result of the evidence of the ripped currency which served as an important evidentiary link

between movant and Golden. The government contends that because probable cause existed, the search of the vehicle was authorized under the automobile exception to the warrant requirement. Additionally, the government contends that the inevitable discovery doctrine holds that even if the evidence was discovered illegally, it need not be suppressed if the government can prove by a preponderance of the evidence that the officers would have discovered it by lawful means, which would have occurred during an inventory search of the vehicle.

"A warrantless search is per se unreasonable under the Fourth Amendment, subject to a few well-established exceptions." *United States v. Cruz-Rea*, 626 F.3d 929, 938 (7th Cir. 2010). "Under the automobile exception to the warrant requirement, a law enforcement officer may conduct a warrantless search of a vehicle when, based on the totality of the circumstances, he has probable cause to believe the vehicle contains contraband or evidence of a crime." *Id.* at 938-39. "Probable cause to search exists where there is a fair probability that an officer will find contraband or evidence of illegal activity at a specified location based on the totality of the circumstances." *United States v. Washburn*, 383 F.3d 638, 642 (7th Cir. 2004). "Probable cause is a 'fluid concept,' [citation], and when an informant is involved, it may turn upon the informant's reliability, basis for knowledge, and degree of detail, as well as the ability of the police to corroborate the information." *Id.* (citing *United States v. Johnson*, 289 F.3d 1034, 1038-39 (7th Cir. 2002)). "In determining whether there is a probable cause to search, law enforcement officers may draw reasonable inferences from the facts based on their training and experience." *United*

*States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009).

Here, the police could conduct a warrantless search of the vehicle under the automobile exception because under the totality of the circumstances the police had probable cause to believe that the vehicle contained contraband or evidence of a crime. The evidence shows that the officers had observed Cooper and Golden meet during all three controlled buys. On the third buy, the officers gave the informant marked money to purchase the drugs and after seeing Golden get into Cooper's vehicle for approximately two minutes and then Cooper drive away, the officers attempted to pull Cooper over but he continued driving for several blocks while officers observed him bending over in his car. The totality of these circumstances gave the officers probable cause to believe that the vehicle contained contraband or evidence of a crime, whether that would have been evidence of drugs or the marked money used to purchase the drugs. Furthermore, Cooper's conduct of refusing to stop and bending over in his car gave officers an inference that he was attempting to obtain a weapon. This was certainly a reasonable inference to draw based upon the facts and training and gave the officers probable cause to search the vehicle where they found the marked money that movant had ripped up and placed under his seat.

As to movant's argument that no exigent circumstances existed because movant was in custody, this argument has been rejected by the Seventh Circuit. See *United States v. Washburn*, 383 F.3d 638, 641 (7th Cir. 2004) (rejecting defendant's argument that his lack of accessibility to the van made inapplicable the automobile exception because defendant's van was inherently, even if not immediately, mobile,

and based upon on the diminished expectation of privacy in one's vehicle); *Zahursky*, 580 F.3d at 522-23 (dismissing defendant's argument that the automobile exception did not apply because there was no threat that his car would be moved or become mobile because it had been seized and was to be impounded because his car was inherently mobile and he had a lesser expectation of privacy). Similarly here, movant's vehicle was inherently mobile and he had a lesser expectation of privacy.

The Seventh Circuit has also rejected movant's argument that nothing prevented law enforcement personnel from applying for and obtaining a search warrant prior to searching the vehicle. See *Zahursky*, 580 F.3d at 523 (denying defendant's complaint that there were no unforeseeable or exigent circumstances that would have prevented the agents from obtaining a search warrant for the vehicle because the officers were not required to obtain a search warrant when the automobile exception to the warrant requirement applied). Thus, like in *Zahursky*, no search warrant was needed because the automobile exception applied. Therefore, movant cannot show that his trial counsel's performance fell below objective standards for reasonably effective representation, and as we stated above, even if he could, it would be futile because the evidence presented against movant was so overwhelming that movant could not establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Ground two denied.

*D. Ground Three: Unlawful Apartment Search*

Movant's third claim is that he "was denied effective assistance of counsel when

counsel failed to move to suppress the evidence obtained as a result [of] the search of the apartment." Movant contends that the search warrant was issued without probable cause because at the time it was issued there was no evidence that movant lived in the apartment or that any drugs, currency, or firearms would be found there. Further, he argues that the search warrant affidavit was too general to establish probable cause. Movant posits that had a motion to suppress been filed, the admission of the drugs, guns, and currency found would not have occurred and this "would have been a significantly different case than the one the [g]overnment submitted for trial." The government contends that because movant raised this exact issue in his direct appeal, it is not properly raised in his petition. The Court agrees.

On appeal, Cooper suggested that a police officer lied in an affidavit for a warrant to search his apartment and that the district court should have conducted a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether to suppress the drugs and guns found there. The appellate court found, however, that it would be frivolous to a raise a *Franks* argument on appeal because Cooper forfeited that argument by not moving to suppress "[a]nd in any event, Cooper was not entitled to a *Franks* hearing because, even after setting aside the allegedly false information, sufficient content in the affidavit supports a finding of probable cause." *Cooper*, 224 Fed. Appx. at 541 (citing *United States v. Souffront*, 338 F.3d 809, 922 (7th Cir. 2003)). Specifically, the appellate court referenced that the fact "[t]hat affiant stated that agents observed Cooper meet with Golden during the controlled buys and saw Cooper stop at his apartment immediately before one of the

purchases." *Cooper*, 224 Fed. Appx. at 541. Thus, the Seventh Circuit has already determined that the affidavit supported a finding of probable cause to search the apartment. Therefore, movant cannot establish either prong under *Strickland*.

### E. Ground Four: Speedy Trial Act Violation

Movant's fourth complaint is that he "was denied effective assistance of counsel when counsel failed to file a motion to dismiss for a violation of the Speedy Trial Act." Specifically, movant raises two separate speedy trial issues. First, he contends that "[t]he charges contained in Counts IV, V, and VI of the superseding indictment should have been the subject of a motion to dismiss, which would have been successful if [m]ovant's counsel had filed such a motion." Movant argues that this superseding indictment was filed "long after the expiration of the 30-day period provided for in 18 U.S.C. §3161(b)." Second, he posits that he received ineffective assistance of counsel when counsel failed to move to dismiss the indictment for a violation of the seventy-day speedy trial clock. The government responds by contending that because there was no speedy trial violation, trial counsel did not render ineffective assistance of counsel by failing to file a motion to dismiss. Thus, movant can neither establish that his counsel's performance fell below objective standards for reasonably effective representation and that counsel's alleged deficiency prejudiced the defense.

As to movant's first contention, the Speedy Trial Act (the Act) provides in relevant part that "[a]ny information or indictment charging an individual with the commission of a offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."

18 U.S.C. § 3161(b). Here, movant was arrested on July 10, 2003, and on August 7, 2003, a one count indictment was filed against movant. Subsequently, three superseding indictments were filed against movant, on January 4, January 20, and February 8, 2005, adding additional charges against movant. Trial began on March 21, 2005. It is movant's contention that his speedy trial rights were violated because the superseding indictments were filed more than thirty days after his arrest. This argument, however, has been rejected by the Seventh Circuit. See *United States v. Hemmings*, 258 F.3d 587, 591-93 (7th Cir. 2001) (holding that the district court was correct in refusing to dismiss counts four and five as untimely where the government filed a superseding indictment with additional charges more than thirty days after arrest). Thus, movant's argument is without merit. Counsel's performance fell within objective standards for reasonably effective representation. Ergo, movant can show no prejudice.

With regard to movant's second speedy trial argument, the Act provides in relevant part that "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The Act then goes on to list a set of exclusions from the seventy day period. See *id.* at (h). If a defendant is not brought to trial within the seventy day time limit less any exclusions, then the "information or indictment shall

be dismissed on motion by the defendant." 18 U.S.C. § 3162(a)(2). "Failure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal . . . ." *Id.* Requiring that a defendant move before the trial starts limits the effects of a dismissal without prejudice by ensuring that an expensive and time-consuming trial will not be mooted by a late-filed motion under the Act and prevents undue defense gamesmanship. *Zedner v. United States*, 547 U.S. 489, 503 (2006).

If the defendant does move to dismiss, the Court has discretion to dismiss with or without prejudice. 18 U.S.C. § 3162(a)(2). "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Act] and on the administration of justice." *Id.*

"The less severe sanction (dismissal without prejudice) lets the court avoid unduly impairing the enforcement of federal criminal laws–though even this sanction imposes some costs on the prosecution and the court, which further encourages compliance." *Zedner*, 547 U.S. at 499. "When an indictment is dismissed without prejudice, the prosecutor may of course seek–and in the great majority of cases will be able to obtain–a new indictment, for even if 'the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned . . . within six calendar months of the date of the dismissal.'" *Id.* (quoting 18 U.S.C. § 3288).

Here, movant claims that this case involved 228 non-excludable days while the

government asserts that only thirty-eight non-excludable days ran. On the merits of the Speedy Trial Act claim, it is not at all clear that the seventy-day period was violated. There are two relevant[3] time periods at issue, each of which has at least an arguable basis for being excluded from the seventy-day time period. The first is whether the magistrate judge's order for pretrial discovery and inspection, which granted the parties twenty-one days to file pretrial motions, was excludable. The government acknowledges that on March 8, 2010, the Supreme Court decided *Bloate v. United States*, 130 S. Ct. 1345, 1357 (2010), where the Court held that the time to prepare pretrial motions is not automatically excludable but excludable only upon an ends of justice continuance, but argues that at the time the order was entered in this case, August 13, 2003, the twenty-one days granted for the motions were excludable in the Seventh Circuit, citing *United States v. Garrett*, 45 F.3d 1135, 1138 (7th Cir. 1995) and *United States v. Baskin-Bey*, 45 F.3d 200, 203 (7th Cir. 1995). The Court agrees, finding that because this time period was excludable during and through the time of movant's trial, trial counsel's performance was not deficient in not moving to dismiss under the Act based upon this time period. See *Knox v. United States*, 400 F.3d 519,522 (7th Cir. 2005) ("A failure to anticipate shifts in legal doctrine cannot be condemned as objectively deficient."). Furthermore, as is explained below, the Court does not find that the speedy trial clock was violated

---

[3]Movant argues several other time periods were not excludable but these arguments are clearly without merit as the time periods were excludable either as delays resulting from any pretrial motion, 18 U.S.C. § 3161(h)(1)(D), or as ends of justice continuances, *id.* at (h)(7)(A).

and that even if it were, counsel may have had strategic reasons for not filing a motion to dismiss and any delays were caused by movant's repeated disputes with and requests for new counsel. Moreover, no prejudice can be shown because this case would have been dismissed without prejudice.

The second relevant time period in dispute concerns the time period surrounding the Court's order of January 23, 2004, directing a competency evaluation. At the final pretrial conference hearing on January 23, 2004, the Court sua sponte ordered that Cooper undergo a competency evaluation due to letters the Court had received from him. The Court informed movant that it "will be tolling the running of the Speedy Trial statute pending your return back to the district." In the Court's docket entry the Court noted that it ordered Cooper to be sent for a "medical evaluation–written order to enter" and also ordered to continue for ends of justice until April 5, 2004. On March 25, 2004, the Court entered an order directing that Cooper should "be transported IMMEDIATELY and FORTHWITH" for an evaluation. At issue here is whether the time between the Court's order of January 23, 2004, and March 25, 2004, is excludable.

Specifically excluded from the seventy day time period, as is relevant to here, is "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant," and "delay resulting from transportation of any defendant . . . to and from places of examination or hospitalization, except that any time consumed in

excess of ten days from the date of an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." *Id.* at (h)(1).

Also excluded is "[a]n period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* at (h)(7)(A). "No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.*

Here, the Court concludes that the time period between the two orders was excludable on the basis that when the Court entered its January 23, 2004, order, it continued the trial until April 5, 2004, based upon his findings that the ends of justice served by taking such action outweighed the best interests of the public and the defendant in a speedy trial. See *id.* This tolled the speedy trial clock until April 5, 2004. Thus, the time period between January 23, 2004, and March 25, 2004, was already tolled. Accordingly, movant cannot show that his counsel's performance fell below objective standards for reasonably effective representation. And even if movant could show that Speedy Trial Act had been violated, as is explained below in the next

section, the Court would not find that defense counsel's behavior fell below an objective standard of reasonableness or that movant was prejudiced thereby. See *United States v. Rushin*, 642 F.3d 1299, 1308 (10th Cir. 2011) ("What we can say based on the record circumstances of this particular case, however, is that a reasonable attorney in the sound exercise of his or her professional judgment arguably might have decided to forgo the filing of a motion to dismiss the indictment as largely ineffective, an imprudent use of limited resources, or even unwarranted gamesmanship.").

### F. Ground Five: Speedy Trial Act Waiver

Movant also contends that he "received ineffective assistance of counsel when his counsel advised movant to sign a Speedy Trial Act waiver." Movant argues that counsel was clearly ineffective in advising movant to sign the waiver because there was no authorization contained in the Act as the Supreme Court pointed out in *Zender v. United States*, 547 U.S. 489 (2006). He asserts that "[t]he misadvice by counsel to [movant] resulted in a lengthy delay of the trial proceedings, and served as a barier [sic] to counsel in moving to dismiss the case for a violation of the Speedy Trial Act." The government contends that because movant raised this claim on appeal, it is not properly raised in his § 2255 motion, and that even if properly raised, movant cannot meet either *Strickland* prong. Specifically, the government contends that "[a] problem with claiming deficient performance by Attorney Stegmeyer, however, is that, on June 24, 2004, when Attorney Stegmeyer advised [movant] to sign the waiver, counsel was following the applicable practice and law at

the time." More importantly, however, movant cannot establish any prejudice because the waiver caused no delay.

First, the Court finds that movant's contention that his counsel was ineffective is properly raised in his § 2255 motion. While movant did raise this claim on appeal, the Seventh Circuit determined that his argument was waived because movant never moved to dismiss the indictment at trial. It is counsel's failure to raise this issue that movant complains of here and it is properly brought.

On June 24, 2004, following movant's return to the district after his examination had completed, the Court held a final pretrial conference where movant and his then retained counsel Charles Stegmeyer attended. Following the hearing, the Court entered an order adopting the evaluation report, finding Cooper competent to stand trial. The Court also noted that counsel for the government advised the Court that they were working on setting up a proffer for Cooper, and defense counsel made an oral motion to continue trial and have the case set for a change of plea hearing. At this pretrial conference hearing, defendant also filed a written waiver of speedy trial with the Court.

On July 26, 2004, movant's attorney Stegmeyer filed a motion to withdraw as movant's attorney, noting that the attorney-client relationship had broken down irretrievably. Two days later movant filed a pro se motion to substitute counsel. On July 29, 2004, the Court entered an order granting the motion to withdraw and substitute counsel. On August 12, 2004, attorney Matthew Vaughn was appointed to represent movant. On August 17, 2004, movant filed a motion to continue the

change of plea hearing so counsel could review discovery and discuss with movant how to proceed.  On August 18, 2004, movant filed a pro se motion to withdraw the waiver of speedy trial.  On August 24, 2004, the Court granted counsel's motion to continue, resetting the change of plea hearing until September 24, 2004.  The next day the Court struck movant's pro se motion to withdraw the speedy trial waiver because movant did not have a right to submit a pro se brief when represented by counsel.

On September 24, 2004, the parties appeared for the change of plea hearing and movant moved to continue the matter because he had only been in this case a short time.  The Court granted movant's request and reset the trial setting to November 15, 2004.  At this hearing, the following discussion took place between the Court and movant:

| | |
|---|---|
| THE COURT; | We are going to have a jury trial on November 15th.  Okay, Mr. Cooper? |
| THE DEFENDANT: | Yes. |
| THE COURT: | You are not in any speed trial problems.  It's been tolled. Whether you've waived your right or not, you have a new attorney.  You didn't want Mr. Stegmeyer. We have a new attorney, and under the rules your attorney needs some time to get up to speed.  You don't object to your attorney requesting this motion to continue, do you? |
| THE DEFENDANT: | No, sir. |

On November 2, 2004, movant filed a motion to continue the final pretrial conference and trial.  On November 5, 2004, the Court granted the motion to continue and reset the trial date until February 7, 2005.  On November 24, 2004,

movant filed a pro se motion of ineffective assistance of counsel motion against attorney Vaughn, contending that Vaughn has continually refused to file motions on his behalf, including a motion for dismissal and a motion to withdraw his speedy trial waiver. He also alleged that he did not consent to Vaughn filing a motion to continue on November 2, 2004, in violation of his speedy trial rights. The Court construed this as a motion for new counsel. On December 7, 2004, the Court set the matter for hearing on December 16, 2004. On December 10, 2004, Vaughn filed a motion to continue the hearing set for December 16, 2004, and the Court granted that motion, setting it for December 17, 2004. On December 17, 2004, the Court heard from Cooper and Vaughn regarding Cooper's pro se motion, which the Court construed as a motion for new counsel. Vaughn informed the Court that Cooper wanted him to file certain motions that had no merit, and that as an officer of the court, he could not file those motions. The Court advised Cooper that he could represent himself with Vaughn as standby counsel, and Cooper could file the desired motions himself. Cooper declined and the Court ordered Vaughn to remain in this case.

On January 31, 2005, at the final pretrial hearing, movant was arraigned on the second superseding indictment and was asked whether he would waive the thirty day rule so that trial could proceed on February 7, 2005. Movant refused. Thus, the Court rescheduled the trial for March 21, 2005. On March 4, 2005, the Court entered an order indicating that Judge Herndon would preside over Cooper's trial on March 21, 2005, because Judge Gilbert had another criminal trial. On March 9,

2005, attorney Vaughn filed a motion to continue, or in the alternative, request for other relief, noting that movant had repeatedly told counsel that movant did not wish for a continuance of the trial and that on multiple occasions, defendant had sought to revoke his waiver of speedy trial that he filed on June 24, 2012, but that counsel needed additional time to adequately prepare for trial or alternatively wanted an order directing the Marshall's office to serve amended subpoenas on individuals who were to testify at trial. On March 10, 2012, the Court entered an order finding that because the Court finds "further delay of this trial unnecessary and, in fact, problematic, the Court DENIES Defendant's motion to continue (Doc. 108)." "However, the Court GRANTS Defendant's alternative request to have amended subpoenas served on individuals to appear at trial." Trial began March 21, 2005.

Movant's complaint center's on attorney Stegmeyer's conduct in advising movant to sign the speedy trial waiver. In fact, movant acknowledges that this is the reason that attorney Vaughn did not file a motion to dismiss, contending that it "served as a barier [sic] to counsel in moving to dismiss the case for a violation of the Speedy Trial Act."

Here, the Court does not find that attorney Stegmeyer's performance fell below objective standards for reasonably effective representation by advising movant to sign the speedy trial waiver. At the time attorney Stegmeyer advised movant to sign the waiver, it appeared that movant had or was going to enter into plea negotiations with the government as the Court had changed the trial date to a change of plea hearing. Perhaps attorney Stegmeyer believed that no speedy trial violation had occurred but

he wanted to try and curry favor with the government by filing a waiver of his speedy trial rights, whether valid or not, as they entered into plea negotiations. Moreover, attorney Stegmeyer may have moved to withdraw the waiver after realizing that a plea would not be entered and that trial was going to take place, but he was removed before having an opportunity to do so.

Most importantly, however, movant cannot show, for a number of reasons, a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceedings would have been different. Movant contends that the waiver acted as a barrier to attorney Vaughn filing a motion to dismiss but even if Vaughn would have filed the motion the result would have been no different, and movant was given ample opportunities to file the motion on his own behalf if he thought his counsel's performance was deficient but he chose to keep counsel. In fact, it is apparent any motion to dismiss would have been denied by Judge Gilbert who clearly indicated that he did not believe the speedy trial act had been violated, stating to Cooper and Vaughn at the November 15, 2004, hearing that there were no "speedy trial problems," that the speedy trial clock had been tolled, and that "[w]hether you've waived your right or not, you have a new attorney" who needs more time to prepare for trial and that movant did not object to him doing so. Further, had a motion to dismiss been filed in front of this judge and it could be established that a speedy trial violation occurred, the Court would have dismissed this case without prejudice, considering the seriousness of the offense, the facts and circumstances of the case that led to the dismissal, and the impact of a reprosecution on administration of the

Act and on the administration of justice. 18 U.S.C. § 3162(a)(2). Furthermore, it is highly likely, especially considering the number of superseding indictments the government issued shortly before trial that the government would have been able to obtain a new indictment. See *Zedner*, 547 U.S. 499 ("When an indictment is dismissed without prejudice, the prosecutor may of course seek–and in the great majority of cases will be able to obtain–a new indictment, for even if 'the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned . . . within six calendar months of the date of the dismissal.'")). Thus, the movant cannot show that he was prejudiced thereby.

G. *Ground Six: Failure to File a Motion to Exclude*

In his sixth ground, movant claims that he "received ineffective assistance of counsel when counsel failed to move to preclude the testimony of those witnesses who were given something of value in exchange for their testimony." Movant avers that "[h]ad counsel moved to preclude the witnesses from testifying as their testimony had been procured in violation of 18 U.S.C. §201(c)(2), the results of the case would have been different." In essence, movant is arguing that has trial counsel was ineffective for failing to file a motion to exclude the testimony of witnesses for allegedly violating the federal bribery statute, 18 U.S.C. § 201(c)(2), which prohibits offering something of value in exchange for testimony. Movant's argument, however, was denied in *United States v. Condon*, 170 F.3d 687 (7th Cir. 1999).

In *Condon*, the Seventh Circuit rejected the defendant's "contention that 18 U.S.C. § 201(c)(2) forecloses testimony from witnesses who were promised immunity

from prosecution (or lower sentences) in exchange for their cooperation." *Id.* at 688. There, the appellate court pointed out that § "201(c)(2) is a criminal statute, not a private right of action or a rule of evidence. It provides specific consequences: fines and imprisonment. Exclusion of evidence would not be an appropriate additional consequence." *Id.* at 689. Thus, movant's counsel was hardly ineffective for failing to move to preclude the testimony of those witnesses who were given something of value in exchange for their testimony. See also *United States v. Trujillo*, 959 F.2d 1377, 1384 (7th Cir. 1992) ("[U]nless testimony is 'inherently unbelievable,' a guilty verdict may be based on the testimony of a co-conspirator testifying pursuant to a plea agreement. [Citation]. We believe that a verdict may also be based upon a confidential informant's testimony."). Therefore, counsel's performance was not below an objective standard of reasonably effective representation and movant suffered no prejudice.

### H. Ground Seven: Failure to Investigate the Facts

In his seventh ground, movant claims that he "received ineffective assistance of counsel when counsel failed to conduct an investigation of the facts of the case." Movant contends that none of the three attorneys he had in this case prior to his trial did any investigative work prior to trial. Generally, movant claims that counsel's failure to conduct any interviews of the government's witnesses rendered counsel unable to mount any effective cross-examination and less able to exploit any inconsistencies. Specifically, movant points to inconsistencies between witnesses Greg Woods and Debbie Lewis. Movant argues that had counsel properly

investigated the case, he would have been able to exploit inconsistencies in statements made by witnesses Greg Woods and Debbie Lewis as to the amounts of cocaine they purchased from movant. Movant contends that "[t]hese inconsistencies, properly exploited, would have served to undermine the confidence of the jury in the truthfulness of the witnesses called by the [g]overnment."

Movant also contends that counsel's failure to interview witnesses deprived him of the ability to develop other witnesses who could have offered testimony that served to impeach the credibility of the government's witnesses. Specifically, movant argues that had counsel interviewed Amber Kaufman, counsel would have learned of David Newberry, whose testimony would have been contrary to Kaufman's in that he would have testified that Amber Kaufman did not live with him in Alto Pass, Illinois, that he was not being "fronted" drugs by movant, and that he had never met movant prior to meeting him in prison. In his reply, movant attached a declaration from David Newberry, a fellow inmate, which supports his theory. Movant claims that coincidently and unexpectedly he met Newberry in prison.

"When a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced." *United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) (citing *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003)). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "In any effectiveness case,

a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* "In assessing the reasonableness of an attorney's investigation, however, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003).

"[C]hoices about trial practice and management–should a given witness's testimony be presented? should a hearsay objection be made? what language should be proposed for the jury instructions?–are committed to counsel, not only because they are numerous (asking the defendant each time would be impractical) but also because they are the sort of choices for which legal training and experience are most helpful." *United States v. Babul*, 476 F.3d 498, 500 (7th Cir. 2007). "A defendant may act as his own advocate, [citation], but when he chooses to have a lawyer conduct the defense, the lawyer gets to *conduct* the defense and not just whisper advice in the defendant's ear each time a decision must be made." *Id.* "After a witness testifies, counsel rather than the client decides whether to cross-examine, and, if so, what lines of inquiry to pursue." *Id.* at 501. "The check on counsel's decisions is not the defendant's assent at each step along way, but the doctrine of ineffective assistance, which ensures that counsel's work as a whole satisfies professional standards." *Id.*

Here, movant has failed to show how his counsel was ineffective. Decisions such as what witnesses to interview and determinations like the extent of cross-

examination are matters of trial strategy within counsel's discretion. Movant attempts to point out alleged inconsistencies in three witnesses' testimony does nothing to convince this Court that his trial counsel was unreasonable in his investigation or his representation as a whole. Even if movant could provide specific evidence showing these alleged inconsistencies in witnesses' statements that he claims should have been exploited on cross-examination, movant cannot establish how he was prejudiced thereby. The fact of the matter is that the evidence against movant in this case was overwhelming. The government presented evidence from Golden, the informant, several officers, and nine other witnesses who bought drugs either directly or through middlemen from movant. This evidence substantially established movant's guilt, and even had counsel brought out these alleged inconsistencies at trial in these three witnesses' testimony, the result would still be the same. Movant simply cannot show that his counsel's fell below objective standards for reasonably effective representation or that he was prejudiced thereby. See *Mulero v. Thompson*, 668 F.3d 529, 2012 U.S. App. LEXIS 2398, at *22-30 (7th Cir. 2012) (affirming the trial court's decision denying habeas relief on petitioner's three ineffective assistance of counsel claims on prejudice grounds where the evidence against petitioner was so overwhelming that even assuming petitioner's attorney was deficient, the trial court did not err in concluding the petitioner suffered no prejudice).

I. *Ground Eight: Failure to Object to Sentencing Enhancement*

Lastly, movant contends that he received ineffective assistance of counsel at the

sentencing phase of his criminal case when his fourth attorney failed to object to the application of the two-point enhancement for the possession of firearms in furtherance of drug trafficking. Movant avers that "[w]hile counsel did superfically [sic] object to the application of the two-point enhancement for the firearms found in the apart ment [sic] during the course of the execution of the search warrant on July 10, 2003, counsel did not point out the relevant facts," specifically that he failed to note that the firearms were not shown to have been utilized in connection with any drug trafficking crime. The government argues that movant's complaint is faulty because his attorney did file a written objection to the enhancement, and that movant can meet neither prong under *Strickland*.

Movant clearly cannot establish that his trial counsel's performance fell below objective standards for reasonably effective representation and that this deficiency prejudiced the defense. Here, despite movant's inconsistency between whether his counsel objected or "superficially" objected to the enhancement, it is obvious that he did object and did so within objective standards for reasonably effective representation. Indeed, movant's counsel not only filed a written objection to the enhancement but also argued that the enhancement should not apply at movant's sentencing. Furthermore, movant can show no prejudice because movant raised the argument on appeal as to whether the district court properly increased his offense level based on the firearms found in his apartment and the Seventh Circuit determined that it "would be frivolous to argue that the court erred by applying this adjustment," noting that the "adjustment applies 'unless it is clearly improbably that

the weapon was connected with the offense.'" *Cooper*, 224 Fed. Appx. at 543-43 (quoting U.S.S.G. § 2D.1(b)(1) cmt. n. 3). Thus, this ground is also rejected.

*J. Certificate of Appealability (COA)*

Pursuant to 28 U.S.C. § 2253(c)(1), a COA is required for appeal from a final order in a habeas corpus proceeding under 28 U.S.C. § 2255. *See* 28 U.S.C. § 2253(c). A COA may issue only if the applicant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the Court denies petitioner's claims on the merits and not merely for procedural reasons, the Supreme Court has found "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Dalton v. Battaglia*, 402 F.3d 729, 738 (7th Cir. 2005) ("[R]easonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citation omitted)). Thus, a petitioner "seeking a COA must prove 'something more than the absence of frivolity' or the existence of mere 'good faith' on his or her part." *Miller-El*, 537 U.S. at 338 (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

Given the aforementioned reasoning, no reasonable jurist could debate whether the Court should have resolved the petition in a different manner. Accordingly, the Court declines to issue movant a COA.

Page 38 of 39

## IV. Conclusion

For the aformentioned reasons, movant's § 2255 motion is denied. The Court

will not issue a COA. The case is closed. The Clerk is to enter judgment accordingly.

**IT IS ORDERED.**

Signed this 23nd day of March, 2012.

David R. Herndon
2012.03.23
12:14:26 -05'00'

**Chief Judge**
**United States District Court**